# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| NOELLE MAYES,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF NEW HAVEN and LESLEE WITCHER,<br>       Defendants. | Civil Action No.<br>3:22 - CV - 1426 (CSH)<br><br><br>**NOVEMBER 26, 2024** |

## RULING ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### [Doc. 19]

**HAIGHT, Senior District Judge:**

## I.  BACKGROUND

*Pro se* Plaintiff Noelle Mayes commenced this action against the City of New Haven and Leslee Witcher, a former New Haven police officer, on November 8, 2022.  Doc. 1 (Complaint). As part of a "convoluted procedural history," as detailed in the Court's prior Order of July 11, 2023 [Doc. 13], Plaintiff filed a "Second Amended Complaint" on August 7, 2023 [Doc. 15].  In that pleading, she alleges that the New Haven Police Department "engaged in a conspiracy to frame [her] for felony violation of a restraining order, harassment [in the] 2nd degree, and threatening [in the] 2nd degree." *Id.* ¶ 1.

Specifically, then-Officer Witcher allegedly conspired with a woman named LaJeffies Hill to "manufacture[ ] 'evidence' that falsely implicated Plaintiff" in a crime. *Id.* ¶¶ 11-14.[1]  As a result

---

[1]  The false evidence included allegations that Plaintiff had "posted negative opinions on social media pertaining to . . . LaJeffies Hill" and appeared at Hill's residence to ask her to "come

of this false evidence, Plaintiff was arrested on May 9, 2017. *Id.* ¶ 11. "After more than two years of going back and forth to court," litigating *pro se*, Plaintiff was "able to obtain a dismissal" of the charges against her. *Id.* ¶ 2. By the Fall of 2019 she performed the legal research necessary to "establish her innocence [of] a crime [for] which she had been wrongfully charged." *Id.* ¶ 3. The criminal charges against her were dismissed on November 8, 2019. *Id.* ¶ 16.

As a result of her ordeal, Plaintiff states that she has experienced "unnecessary stress . . . , anxiety, insomnia[,] loss of appetite, loss of enjoyment of life, fear[ ] [of] conviction, loss of job opportunities," inability to "work[ ] with the family business," loss of "critical bonding time" with her infant baby, and depression. *Id.* ¶¶ 1, 4.

To recover for her alleged losses and injuries, Plaintiff includes Five Counts in the currently-operative "Second Amended Complaint: (I) " Section 1983 Due Process for Deprivation of a Fair Trial," (II) "Section 1985 Conspiracy to Commit Malicious Prosecution," (III) State Law Malicious Prosecution, (IV) State Law Intentional Infliction of Emotional Distress, and (V) State Law Respondeat Superior. I consider these claims liberally. Defendants have interpreted these Counts to include:   four civil rights claims under 42 U.S.C. § 1983: (1) false arrest, (2) malicious prosecution, (3) *Monell* or municipal liability, and (4) due process; one claim under 42 U.S.C. § 1985 for conspiracy to commit malicious prosecution; and state law claims for malicious prosecution, intentional infliction of emotional distress, and respondeat superior.

Pending before the Court is Defendants' Rule 12(b)(6) "Motion to Dismiss" Plaintiff's case for failure to state a claim upon which relief may be granted. Doc. 19. Despite being sent notice pursuant to Local Civil Rule 12(a), indicating that her claims "may be dismissed without further

---

outside and fight." Doc. 15, ¶ 11.

notice if [she] do[es] not file opposition papers," Doc. 19-2, at 1, Plaintiff has filed no response to Defendants' motion to dismiss.[2] Under Local Civil Rule 7(a)(2), "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2). The Court herein resolves Defendants' motion based on the limited motion papers and the facts established by the record.

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint if that pleading fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the United States Supreme Court's seminal holding in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In so pleading, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me

_____

[2] The Clerk's Office has noted that in September 2023, Mayes did not receive the envelope containing a Court-issued "Rule 41(a) Notice" for failure to prosecute her action for six months. The envelope had been mailed to her address of record but was returned to Court by postal service, marked "Undeliverable. Return to Sender– Unable to Forward." Defendants have certified that they served their current motion papers upon Plaintiff by mailing them to her same address of record, but there has been no confirmation whether she received these papers.

accusation." *Id*. (citing *Twombly*, 550 U.S. at 555).

"Where, as here, the complaint was filed *pro se*, it must be construed liberally 'to raise the strongest arguments [it] suggest[s].' " *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief," *Walker*, 717 F.3d at 124 (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

As discussed more fully *infra,* in the case at bar, Defendants assert that Plaintiff has failed to state any viable claim as the result of untimely commencement of the action. Specifically, Defendants argue that all of Plaintiff's claims are barred by the applicable statutes of limitation. Such statutes of limitation are designed to protect against the inaccuracies and injustice that may arise if evidence grows stale or memories dull. *See, e.g., Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007). These statutes "protect interests in reliance and repose, guard against stale demands, and limit the circumstances in which a reviewing court can grant relief...." *Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 409 (2d Cir. 2004) (citations and internal quotation marks omitted), *as amended* (Jan. 7, 2005).

"It is proper to raise the defense of the statute of limitations through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Joslin v. Grossman*, 107 F. Supp. 2d 150, 154 (D. Conn. 2000) (citation omitted). In ruling on such a motion, the court must decide "whether the time alleged in the complaint indicates that the cause of action has not been brought within the statute of limitations." *Id.* In making that determination, the Court accepts all well-pleaded material facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id. See also Sec. & Exch. Comm'n v. Fiore*, 416 F. Supp. 3d 306, 330–31 (S.D.N.Y. 2019) ("[A] claim

4

should only be dismissed on a motion to dismiss based on a statute of limitations defense 'if the factual allegations in the complaint clearly show that the claim is untimely,' and if 'drawing all reasonable inferences in favor of the plaintiff, the court concludes that the plaintiff's own factual allegations prove the defendant's statute of limitations defense.'") (quoting *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010)).

In particular, "[w]hile a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion '[w]here the dates in a complaint show that an action is barred by a statute of limitations . . . .'" *Chisholm*, 514 F. Supp. 2d at 324 (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989)). *See also Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602 (S.D.N.Y. 2006) ("A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) . . . ."), *aff'd,* 323 F. App'x 16 (2d Cir. 2009).

### 2. Rule 6(a)

The general rule for computing time limitations in federal courts is Federal Rule of Civil Procedure 6(a). *See, e.g., White v. Conway*, No. 9:07-CV-1175 (FJS/GHL), 2011 WL 1315592, at *3 (N.D.N.Y. Mar. 31, 2011) (citing *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003)). Specifically, Federal Rule 6 of Civil Procedure, captioned "Computing and Extending Time," sets forth the "rules [that] apply in computing any time period specified in [the] rules" of civil procedure. Fed. R. Civ. P. 6(a).

As discussed below, for purposes of this Ruling, the relevant computations of time are those for "period[s] stated in days or a longer unit"— in the present case, years. "When the period is

stated in days or a longer unit of time [one must]:

> (A) exclude the day of the event that triggers the period;
>
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>
> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

*Id.* 6(a)(1).

Furthermore, as the Second Circuit stated in *Day v. Morgenthau*, 909 F.2d 75 (2d Cir.1990), in a civil rights action, even though the day that the action accrues is not to be counted pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, "'[w]hen the applicable limitations period is measured in years, . . . the anniversary date [of the date of accrual is] the last day for instituting action.'" *Id.* at 79 (quoting *Evans v. Hawker-Siddeley Aviation, Ltd.*, 482 F.Supp. 547, 550 (S.D.N.Y. 1979)).  Therefore, in *Day*, the Second Circuit held that the action, filed on December 13, 1988, alleging an unlawful arrest and search that occurred on December 12, 1985, was one day late and dismissed the complaint. *Id.  See also White*, 2011 WL 1315592, at *4 (district court affirmed magistrate judge's dismissal of § 2254 petition, filed on September 21, 2007, as one day late because date of accrual was September 20, 2006, so  pursuant to Fed. R. Civ. P. 6, petitioner had until September 20, 2007, to file his petition).

## B.  Defendants' Motion to Dismiss

In Defendants' pending motion, they argue that each of Plaintiff's claims is barred by the statute of limitations and that the relevant, pleaded facts support that conclusion.

### 1.  *Section 1983 Claims*

As to her claims pursuant to 42 U.S.C. § 1983— (1) false arrest, (2) malicious prosecution,

(3) *Monell* or municipal liability, and (4) due process— Plaintiff initially filed each claim in her original Complaint on November 8, 2022.[3]  Doc. 1. Defendants argue that all of Plaintiff's § 1983 claims are untimely.

The Second Circuit has repeatedly stated that "[s]ince Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations" and, as section 1983 claims "are best characterized as personal injury actions, . . . a state's personal-injury statute of limitations . . . should be applied" to them. *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir.1994) (citations omitted).  *See also Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir.2013) ("Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law") (citations omitted); *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) ("In section 1983 actions, the applicable limitations period is found in the "general or residual [state] statute [of limitations] for personal injury actions . . . .") (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)); *Valenti v. Torrington Bd. of Educ.*, 601 F. Supp. 2d 427, 439 (D. Conn. 2009) ("For § 1983 actions, the statute of limitations is based on 'state-law statute of limitations for tort claims.'") (quoting *Eno Farms Co-op. Ass'n Inc. v. Corporation for Independent Living*, No. 3:06cv1983(AHN), 2007 WL

---

[3]  Under Federal Rule 15 of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when," for example, "the law that provides the applicable statute of limitations allows relation back" or the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(A)-(B). As to the latter example, the Second Circuit has instructed that the Court determines "whether the facts provable under the amended complaint arose out of conduct alleged in the original complaint. . . . If so, the amended complaint will relate back." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 227 (2d Cir. 2006) (citing *Stevelman v. Alias Research*, 174 F.3d 79, 86 (2d Cir. 1999)), *as amended* (Oct. 3, 2006).  Here, Plaintiff eliminated certain claims (*e.g.*, state law indemnification and civil conspiracy, § 1983 equal protection) and redrafted others, but all claims in her Second Amended Complaint arose out of the occurrences that were alleged in her original Complaint.

3308016, at *9 (D.Conn. Nov. 13, 2007)).

"Under Connecticut law, an action founded upon a tort carries a three-year statute of limitations, Conn. Gen. Stat. § 52-577, and under federal law, a claim accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the harm." *Assegai v. Bloomfield Bd. of Ed.*, 165 F. App'x 932, 934 (2d Cir. 2006) (citations and internal quotation marks omitted). *See also Spencer v. Connecticut*, 560 F. Supp. 2d 153, 158 (D. Conn. 2008) ("Under Connecticut law, '[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.'") (quoting Conn. Gen. Stat. § 52–577). "Section 52–577 . . . governs . . . claims pursuant to the Connecticut Constitution and state common law." *In re State Police Litig.*, 888 F. Supp. 1235, 1249 (D. Conn.1995) (citing *Orticelli v. Powers*, 197 Conn. 9, 16 (1985)).

Consequently, "[i]n Connecticut, a plaintiff must bring his § 1983 claim within three years of the date his claim accrues." *Barile v. City of Hartford*, 264 F. App'x 91, 91 (2d Cir. 2008) (citations omitted). *See, e.g., Perry v. City of Stamford*, 996 F. Supp. 2d 74, 82-83 (D. Conn. 2014) (applying Connecticut's three-year statute of limitations for state personal injury claims to § 1983 claim).

"Although state law determines the length of the statute of limitations for a § 1983 action, it is federal law that determines when the statute of limitations period begins to run." *Spak v. Phillips*, 138 F. Supp. 3d 159, 162 (D. Conn. 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)), *aff'd*, 857 F.3d 458 (2d Cir. 2017). For § 1983 actions, federal law "establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980) (citation and

internal quotation marks omitted). Thus, as the Second Circuit has explained, "[t]he crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Id.* at 192. To the same effect, the Supreme Court has noted "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations, internal quotation marks, and brackets omitted); *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir.2015) (same).

### a. False Arrest

In the case at bar, as to Plaintiff's false arrest claim, the statute of limitations began running on the day she was arrested, May 9, 2017. As the United States Supreme Court has declared, the statute of limitations with respect to a plaintiff's false arrest claim begins to run "when the alleged false imprisonment ends."[4] *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (quoting 2 H. Wood, *Limitation of Actions* § 187d(4), p. 878 (rev. 4th ed.1916)). In light of the fact that "false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." 549 U.S. at 389 (emphasis in original and citations omitted).

"Because the issuance of an arrest warrant represents a classic example of the institution of

---

[4] In *Wallace* the Supreme Court clarified that it referred to the "two torts [of false arrest and false imprisonment] together as false imprisonment." 549 U.S. at 389. The Court reasoned that "[e]very confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." 549 U.S. at 388–89 (quoting M. Newell, *Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process* § 2, p. 57 (1892)).

legal process, the statute of limitations for [plaintiff's] false arrest claims . . . beg[ins] to run upon his arrests." *Nowacki v. Town of New Canaan,* No. 3:16-CV-00407 (JAM), 2017 WL 1158239, at *7 (D. Conn. Mar. 28, 2017) (citations and internal quotation marks omitted).

In the instant case, Plaintiff was arrested on May 9, 2017.  To be timely, her suit would have to have been filed by May 11 , 2020, the first business day after Saturday, May 9, 2020.  *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day [of the filing period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").  However, Plaintiff filed her Complaint on November 8, 2022, more than two years after Connecticut's three-year statute of limitations for tort actions had run, Conn. Gen. Stat. § 52–577. Plaintiff's § 1983 action for false arrest will be dismissed.

### b.  Malicious Prosecution

"For § 1983 claims sounding in malicious prosecution, 'the statute of limitations begins to run when the prosecution terminates in the plaintiff's favor,' which occurs when 'the prosecution against the plaintiff has conclusively ended,' such that 'the underlying indictment or criminal information has been vacated and cannot be revived.'" *Thompson v. Rovella*, 734 F. App'x 787, 788–89 (2d Cir. 2018) (quoting *Spak v. Phillips*, 857 F.3d at 462, 464 (2d Cir. 2017)).  At that point, malice and probable cause —"all of the issues relevant to the claim"—are "ripe for adjudication." *Spak*, 857 F.3d at 464.

In the case at bar, the charges against Plaintiff were dismissed on November 8, 2019, Doc. 1, ¶ 16; and she filed her action on November 8, 2022.  Given Connecticut's three-year statute of limitations for torts, Conn. Gen. Stat. § 52–577, pursuant to Rule 6(a), Fed. R. Civ. P., her malicious prosecution  action was filed on the last day of the limitations period.  Specifically,  she filed on the

"anniversary date" of the accrual of her action. *Day*, 909 F.2d at 79. Because Plaintiff's claim for malicious prosecution was timely-filed, it may proceed.[5]

### c. Due Process

As with Plaintiff's claims for false arrest and malicious prosecution, Congress did not prescribe a statute of limitations for her due process claim, which is substantive and/or procedural. Therefore, the "courts must borrow a state statute of limitations," *Lounsbury*, 25 F.3d at 133, which in this case is Connecticut's three-year "general or residual statute for personal injury actions," *Owens v. Okure*, 488 U.S. 235, 250 (1989). Accrual, for purposes of due process claims, occurs when the Plaintiff "kn[ew] or ha[d] reason to know of the injury" which comprises "the basis" of her action. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).

As Magistrate Judge Vatti discussed in his adopted "Recommended Ruling," the due process claim in this case "is most reasonably construed as a claim for deprivation of the right to a fair trial because it focused on the fabrication of evidence" and "[a] fabricated-evidence claim does not accrue while criminal proceedings are ongoing." Doc. 7, at 9 (citing *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021) and *McDonough v. Smith*, 588 U.S. 109, 119-20 (2019)) (internal quotation marks and brackets omitted). The criminal proceeding must terminate in the plaintiff's favor before the statute of limitations will begin to run. *Id.* (citing *McDonough*, 588 U.S. at 119-20).

Here, the criminal proceedings against Plaintiff were terminated, indicating she knew she was deprived of due process, on November 8, 2019. To be timely under Connecticut General

---

[5] The Court notes that in its prior Order, adopting Magistrate Judge Vatti's "Recommended Ruling" of January 9, 2023, the Court adopted the finding that "further development of the record [was] necessary to ascertain whether the [federal malicious prosecution] claim was timely commenced." Doc. 7, at 8. That was because Plaintiff had not yet provided the specific date that the criminal charges against her were dismissed. Plaintiff has now provided that date as November 8, 2019, which renders the filing of her claim on November 8, 2022, timely.

Statute § 52-577, her due process claim had to be filed by the three-year anniversary date of that termination. *See McDonough,* 588 U.S. at 119–20 ("[T]o bring a fabricated-evidence challenge to criminal proceedings . . . [o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated . . . will the statute of limitations begin to run.") (citations omitted). Plaintiff filed this claim on November 8, 2022, so this claim was timely filed and may proceed.

### d. *Monell* – Municipal Liability

In their "Memorandum of Law" in support of their pending motion to dismiss, Defendants argue that "[i]t is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation."[6] Doc. 19-1, at 5 (quoting *Mastromonaco v. Cty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019)).[7] Defendants then reason that because "all the §1983 claims fail as they are barred [by the statutes of limitation], . . . there can be no *Monell* claim" in this action. *Id.*

To bring a *Monell* claim, a plaintiff must allege sufficient facts to plausibly: (1) "establish that he suffered a constitutional violation," and (2) establish "that the violation resulted from an identified municipal 'policy,' 'custom,' or 'practice.'" *Parker v. City of Long Beach*, 563 F. App'x

---

[6] Although Plaintiff does not label any particular Count as a *Monell* claim in her Second Amended Complaint, she includes allegations in her "Policies and Practices" section stating that Witcher's willful misconduct "was all undertaken pursuant to, and proximately caused by, a policy and practice on the part of the New Haven Police Department." Doc. 15, ¶ 21. Moreover, such misconduct occurred within the scope of Witcher's employment and was "consciously approved at the highest policy making level" by the New Haven Police Department. *Id.* ¶¶ 10, 22.

[7] "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91 (1978).

39, 41 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 690-91). "*Monell* also recognizes liability where 'a municipality's failure to train its employees ... amount[s] to deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

In the case at bar, federal malicious prosecution and due process claims remain pending in this case. Defendants miscalculated the limitations period under Rule 6(a) for Plaintiff's federal malicious prosecution claim, failing to note that it was filed by the three-year anniversary date of when the charges against her were dismissed. "A state law claim for malicious prosecution may . . . rise to the level of a federal constitutional claim that is actionable under 42 U.S.C. § 1983 if the defendant is a state actor and if the plaintiff who was subject to malicious prosecution was also subject to an arrest or seizure within the meaning of the Fourth Amendment." *Spak*, 138 F. Supp. 3d at 161 (citing *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir.2010), and *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (per curiam)).[8] Defendants include the municipality of the City of New Haven, and Plaintiff's alleged false arrest falls within the meaning of the Fourth Amendment.[9] Her claim is thus constitutional.

Furthermore, as discussed above, her constitutional due process claim for fabrication of evidence is timely and may proceed. Pursuant to Connecticut General Statute § 52-577, Plaintiff filed this claim by the three-year anniversary date of the termination of her criminal charges. *See*

---

[8] *Spak, aff'd,* 857 F.3d 458 (2d Cir. 2017).

[9] Plaintiff also included Leslee Witcher, a New Haven police officer, as a defendant. "It is well-established that a plaintiff must prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*." *Aquino v. City of New York*, No. 1:16-CV-1577-GHW, 2017 WL 2223921, at *1 (S.D.N.Y. May 19, 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

*McDonough,* 588 U.S. at 119–20.

However, with respect to the statute of limitations for a *Monell* claim, the cause of action accrues when it becomes clear the municipality at issue has committed a harmful act stemming form its policy or custom. As noted by the Second Circuit:

> Since an actionable [*Monell*] claim . . . against a . . . municipality depends on a harm stemming from the municipality's "policy or custom," . . . a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipality's] "policy or custom."

*Birch v. City of New York*, 675 F. App'x 43, 45 (2d Cir. 2017) (quoting *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978)). "In light of *Pinaud*, the limitations period for [plaintiff]'s *Monell* claims did not begin until such time as he should have known that his adverse actions resulted from the City's 'policy or custom.'" *Birch*, 675 F. App'x at 45.

In the case at bar, without specifying a time frame in her Second Amended Complaint, Plaintiff pleads her *Monell* claim with the allegation that the New Haven Police Department engaged in "unconstitutional submission of false evidence" as a "policy and practice," which had been "consciously approved at the highest policy making level for decisions involving the police department." Doc. 15, ¶¶ 21-22. However, the case record reflects that Plaintiff discovered the alleged policy and practice by March 12, 2018. Specifically, in his prior "Recommended Ruling," thereafter adopted by this Court, Magistrate Judge Vatti noted that the *Monell* claim at issue was "patently untimely" because there were "*Monell* allegations in the March 12, 2018 complaint in the prior related action" of *Mayes v. City of New Haven*, No. 3:18-cv-429 (VLB). Doc. 7, at 8 & n. 5. That complaint "demonstrate[d] that [P]laintiff believed by that date, at the latest, that Witcher's

14

alleged actions were undertaken pursuant to a municipal policy or custom." *Id.* at 8 (citing *Mayes*, No. 3:18-cv-429 (VLB), Doc. 1, ¶ 187). Because the present action was filed on November 8, 2022, more than three years after March 12, 2018, the Monell claim is untimely. It will remain dismissed with prejudice.[10]

### 2. *42 U.S.C. § 1985 Conspiracy to Commit Malicious Prosecution*

In Count II of her Second Amended Complaint, Plaintiff once again attempts to state a § 1985 conspiracy claim, alleging that the City of New Haven conspired with a fraudulent victim, LaJeffies Hill, to commit malicious prosecution. Doc. 15, ¶¶ 38-39. That claim was previously dismissed by this Court, with leave to amend, upon partial adoption of Magistrate Judge Vatti's "Recommended Ruling." Doc. 13, at 6.

As pled in the original Complaint, that count "fail[ed] to allege discriminatory animus toward a protected class" and thus failed to state a claim upon which relief may be granted. *Id.* Upon Plaintiff's subsequent filing of the First Amended Complaint, this Court acknowledged that the Recommended Ruling's "conclusions regarding conspiracy . . . [were] rendered moot by the new allegations in the Amended Complaint." *Id.* at 9. The Court then dismissed this claim with leave to amend to include the requisite elements. Specifically, "[t]he four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person

---

[10] In adopting the "Recommended Ruling" [Doc. 7], this Court concurred that the *Monell* claim under § 1983 was time-barred because the action accrued by March of 2018 and the statute of limitations expired "before the filing of the Complaint on November 8, 2022." Doc. 13, at 4. Accordingly, the Court dismissed the *Monell* claim without leave to amend. *Id.* at 10.

or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)).    Moreover, "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Carpenters*, 463 U.S. at 829).

In her Second Amended Complaint, Plaintiff failed to amend her § 1985 claim to include any racial or class-based discriminatory animus.  The "Section 1985 Conspiracy" claim that appears in the Second Amended Complaint is identical to the one pled in the First Amended Complaint. *Compare* Doc. 8, Count III (¶¶ 38-42) *with* Doc. 15, Count II (¶¶ 38-42). Her claim thus remains fatally defective and is once again dismissed.  The Court declines to address the statute of limitations for this dismissed claim.

### 3. *State Law Malicious Prosecution Claim*

In addition to a federal claim for malicious prosecution, Plaintiff alleges a state law version of that claim in Count III of the Second Amended Complaint.[11]  Doc. 15, ¶¶ 43-48.  For the purposes of Defendants' motion to dismiss, the Court notes that the three-year limit contained in  Connecticut General Statute § 52-577 governs all state and federal  malicious prosecution claims.  *Gojcaj v. City of Danbury,* No. 3:14-CV-01739 (MPS), 2016 WL 67688, at *5 (D. Conn. Jan. 5, 2016).  However, despite sharing that statute of limitations provision, the federal and state law claims "differ as to the date on which the statute of limitations begins to run."  *Id.*

---

[11]  In its prior Order, the Court allowed the state law malicious prosecution claim to proceed, Doc. 13, at 9, adopting the holding in the "Recommended Ruling," stating that Plaintiff "appear[ed] to have alleged enough factual content at this stage of the case to warrant further development of the record on the state law claim for malicious prosecution," Doc. 7, at 16.  At that time, no firm date of Plaintiff's arrest had yet been established and no challenge had been made to this claim based on the statute of limitations.

For federal claims, federal law determines the accrual date, which is "when the plaintiff has a complete and present cause of action." *Wallace*, 549 U.S. at 388 (citation and internal quotation marks omitted). That accrual date is generally when criminal proceedings have terminated in the plaintiff's favor (*e.g.*, dismissal of the charges).

On the other hand, the accrual date for state law claims of malicious prosecution is governed by the "occurrence" rule of Connecticut General Statute § 52-577:

> In construing [Section 52-577], which allows an action to be brought within three years *from the date of the act or mission complained of*, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred.

*Fichera v. Mine Hill Corp.*, 207 Conn. 204, 211 (1988) (emphasis added) (citation and internal quotation marks omitted). Under this "occurrence" statute, "the limitation period 'typically begins to run as of the date the complained of conduct occurs, and not the date when the plaintiff first discovers his injury.'" *Gojcaj*, 2016 WL 67688, at *5 (quoting *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 311 (2014)). The statute of limitations for a Connecticut state law cause of action for malicious prosecution thus begins to run at the *outset* of the prosecution. *Id.* at *5–6.

Given this "occurrence" rule, the statute of limitations applicable to a Connecticut state law malicious prosecution claim may begin to run *before* the same statute of limitations would begin to run for a federal § 1983 malicious prosecution claim based on the same facts. *Id.* at *5. The case at bar is such a case.

Here, Plaintiff was arrested on May 9, 2017. That is the date the "complained of" conduct occurred or the outset of her prosecution — the "initiation of the prosecution without probable cause," *Gojcaj*, 2016 WL 67688, at *6. Therefore, to be timely, her state law claim for malicious prosecution should have been filed by Monday, May 11, 2020—the first business day following

Saturday, May 9, 2020. However, it was not filed until November 8, 2022, approximately two and a half years after the applicable three-year statute of limitations had run. Conn. Gen. Stat. § 52-577. Therefore, Plaintiff's Connecticut state law malicious prosecution claim will be dismissed as untimely.[12]

### 4.  *Intentional Infliction of Emotional Distress*

In Count IV of the Second Amended Complaint, Plaintiff has pled a state law claim for intentional infliction of emotional distress (herein "IIED").[13]  Doc. 15, ¶¶ 53-57.  Previously, the Court had dismissed her claim for IIED "based on the passage of the statute of limitations." Doc. 13, at 10.  At that time, based on facts pled in the prior related case of *Mayes v. New Haven*, No. 3:18-cv-429 (VLB), Magistrate Judge Vatti found that Plaintiff alleged that Defendant Witcher's last offensive conduct had occurred in January 2017, which was more than five years before this action had commenced.   Doc. 7, at 2 ("Regarding the third arrest, plaintiff alleged that Officer Witcher obtained an arrest warrant on January 26, 2017, based on fabricated assertions, including that there was a criminal restraining order against plaintiff."); *see also id.* at 17 ("Witcher's last alleged conduct occurred in January 2017 . . . .").  This Court adopted the Recommended Ruling

---

[12] In the prior Order, adopting Magistrate Judge Vatti's "Recommended Ruling" of January 9, 2023, the Court held that plaintiff had alleged enough factual content at this stage of the case to warrant further development of the record on the state law claim for malicious prosecution." Doc. 7, at 16.  However, the present motion to dismiss challenges the timeliness of that claim, as opposed to its factual content.  The Court now dismisses that malicious prosecution claim  as barred by Connecticut's three-year statute of limitations for personal injury actions, Conn. Gen. Stat. § 52-577.

[13] Under Connecticut law, the four elements of an intentional infliction of emotional distress claim include: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011) (quoting *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210, (2000)).

with respect to dismissal of the IIED claim.

However, in her Second Amended Complaint, Plaintiff alleged that "[a]s a proximate result of the Defendant[s'] wronglful acts, [she] suffered damages, including severe emotional distress and anguish" and the "[t]he dates of these actions took place *between May of 2017 forward*." *Id.* ¶ 57 (emphasis added). Given this newly pled time frame, the Court examines whether this claim is now timely.

The statute of limitations applicable to such a claim is Connecticut General Statute § 52-577, which sets forth a time limit of three years from the alleged act or omission. *DeCorso v. Watchtower Bible & Tract Soc. of New York, Inc.*, 78 Conn. App. 865, 873 (2003), *cert. denied*, 266 Conn. 931 (2003); *see also Rodrigues v. J.P. Morgan Chase Bank*, No. 3:08-CV-1417 (PCD), 2009 WL 3710688, at *5 (D. Conn. Nov. 3, 2009) ("As an intentional tort, an IIED claim is subject to a three-year statute of limitations commencing 'from the date of the act or omission complained of.'") (quoting Conn. Gen. Stat. § 52–577).

In addition, Connecticut recognizes the "continuing course of conduct doctrine" in cases of intentional infliction of emotional distress, such that if "additional actions occur within the limitations period, the ability to bring an action will be further extended." *Watts v. Chittenden*, 301 Conn. 575, 596 (2011). As the Connecticut Supreme Court explained in *Watts*, quoting Circuit Judge Richard Posner of the Seventh Circuit:

> A violation is called "continuing," signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. The injuries about which the plaintiff is complaining in [these] case[s] are the consequence of a numerous and continuous series of events . . . . When a single event gives rise to continuing injuries . . . the plaintiff can bring a single suit based on an estimation of his total injuries, and that mode of proceeding is much to be preferred to piecemeal litigation despite the possible loss in accuracy.

301 Conn. at 587–88 (quoting *Heard v. Sheahan*, 253 F.3d 316, 319–20 (7th Cir.2001) (Posner, *J.*)).

*See also, e.g.,  Pollis v. New Sch. for Soc. Rsch.*, 132 F.3d 115, 118 (2d Cir. 1997) ("The continuing

violation doctrine allows a plaintiff in certain circumstances to recover on the basis of an ongoing

policy or practice of illegal activity initiated prior to the limitations period.") (citing  *Hanover Shoe,*

*Inc. v. United Shoe Mach. Corp*., 392 U.S. 481, 502 n. 15 (1968)).

In the present case, Plaintiff alleges that the Defendants' extreme and outrageous course of

conduct in falsely arresting her, and then maliciously prosecuting her, extended from "May of 2017

forward." Doc. 15, ¶ 57.  In addition to her false arrest on May 9, 2017, Plaintiff alleges that she

suffered "unnecessary stress attending court proceedings combined with anxiety, insomnia loss of

appetite, loss of enjoyment of life, fear[ ] [of]  conviction, loss of job opportunities, and being

banned from working with the family business due to pending criminal charges." *Id.* ¶ 1.  Plaintiff

specifies that her stress was particularly exacerbated "during [the] period of court proceedings,"

which involved "more than two years of going back and forth." *Id.* ¶¶ 2, 4.  As Plaintiff alleges,

"[d]uring late 2019, [she] was on the trial list and was preparing to take this case to trial before a

jury because of the Defendant[s]' misconduct." *Id.* ¶ 15.  The period commencing with arrest and

continuing through the trial date thus encompasses alleged activities by Defendants which inflicted

damages — stress, anxiety, insomnia, loss of appetite, *etc.,* as Plaintiff was forced to prepare for

trial.[14]

---

[14]  In Magistrate Judge Vatti's "Recommended Ruling," he focused on the month of January
2017 as the accrual date for the intentional infliction of emotional distress claim.  He stated that this
was the point at which defendant Witcher's "last alleged conduct" to intentionally inflict emotional
distress culminated in Plaintiff's arrest. Doc. 7, at 17.  In so doing, he found the claim "time-barred"
as filed  "more than five years before this action commenced." *Id.*  In adopting that recommendation,
this Court concurred and dismissed the claim without leave to amend. Doc. 13, at 10.  However, in
the Second Amended Complaint, Plaintiff has alleged a continuing course of damaging conduct by
Defendants, leading up to the trial date in late 2019.  Granting leniency to Plaintiff as a *pro se*

Under these circumstances, reading Plaintiff's *pro se* complaint liberally, applying a potential "continuing course of conduct" doctrine, Plaintiff's claim for intentional infliction of emotional distress potentially accrued when her criminal case was dismissed on November 8, 2019. Applying Connecticut's three-year statute of limitations for torts, her claim was timely filed on the three-year anniversary date of its accrual, November 8, 2022. The claim for intentional infliction of emotional distress may proceed.[15]

### 5. *Respondeat Superior*

Plaintiff's final claim, state law respondeat superior, appears in Count V and alleges that Defendant Witcher "was a member of, and an agent of, the New Haven Police Department acting at all relevant times within the scope of employment under the color of law." Doc. 15, ¶ 59. "[U]nder the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment." *Matthiessen v. Vanech*, 266 Conn. 822, 839 (2003) (citation omitted). *See also Daoust v. McWilliams*, 49 Conn. App. 715, 730 (1998) (same) (citing *Pelletier v. Bilbiles*, 154 Conn. 544, 547 (1967)); *Williams v. Cmty. Sols., Inc.*, 932 F. Supp. 2d 323, 334 (D. Conn. 2013) ("[A] master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business.") (quoting *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 500 (1995)). Accordingly, Plaintiff asserts, the Defendant City of New Haven is liable as the principal for the torts of Officer Witcher.

---

litigant, taking into account the corrected and additional facts pled, the Court now applies the "continuing course of conduct" doctrine, which renders this claim timely.

[15] The Court does not address the merits of the intentional infliction of emotional distress claim in this Ruling. As discussed *supra*, Defendants' sole argument for its dismissal was alleged untimeliness, and the Court has determined that such a claim was timely.

Defendants seek dismissal of this claim solely on the basis that it was untimely. They surmise that it is "based upon a negligence claim pursuant to C[onn.] G[en]. S[tat]. § 52-557n." Doc. 19-1, at 7. Defendants acknowledge that "[u]nder respondeat superior, liability attaches 'to a principal merely because the agent committed a tort while acting within the scope of his employment.'" *Id.* (quoting *Larsen Chelsey Realty Co.*, 232 Conn. at 505). Furthermore, because liability under the doctrine of respondeat superior is derivative in nature, "any liability of the principal derives from liability attaching to the agent." *Id.* (citing *Daoust* , 49 Conn. App. at 730). Defendants then conclude that "[i]t necessarily follows that, if there is no liability that attaches to an individual or agent, there can be no derivative liability that attaches to the principal." *Id.*

Furthermore, Connecticut General Statute § 52-584 prescribes a two-year statute of limitations for negligence claims. *Id.* That statute expressly provides that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." *Id.* at 7-8 (quoting Conn. Gen. Stat. § 52-584).

Defendants then argue that the respondeat superior claim must be untimely because Plaintiff was arrested on May 9, 2017, so pursuant to Connecticut General Statute § 52-584 , her suit should have been filed within two years after that date. However, Plaintiff filed her original Complaint on November 8, 2022, more that three years after the relevant statute of limitations expired. Doc. 19-1, at 8. Because any negligence claim should be dismissed as untimely, "there can be no derivative liability under the concept of [respondeat] superior." *Id.* Defendants thus request the Court to dismiss that claim.

It is true that "[t]he liability of the employer is customarily predicated under common law *respondeat superior* on a theory of negligence in its hiring, supervision and control of its employee." *La Liberte v. Reid*, No. 18-CV-5398-DLI-JRC, 2023 WL 6593985, at *8 (E.D.N.Y. Aug. 18, 2023) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 18CV5398 (DLI) (JRC), 2023 WL 6370772 (E.D.N.Y. Sept. 30, 2023). However, there are no allegations in the Second Amended Complaint to suggest that the City of New Haven *negligently* hired, supervised, or retained Witcher. Rather, Plaintiff's allegations in her Second Amended Complaint suggest that Defendant police officer Witcher acted intentionally, as opposed to negligently, in conspiracy with her employer, the New Haven Police Department. For example, Plaintiff accuses Defendant Witcher of acting in an "extreme and outrageous" fashion with "malice" and "willfulness" to intentionally inflict emotional distress, Doc. 15, ¶¶ 54, 56; and Witcher was "a member of, and an agent of, the New Haven Police Department acting at all relevant times within the scope of employment," *id.* ¶ 59.

Respondeat superior may apply to an employer when the employee commits the tort of intentional infliction of emotional distress. *See, e.g., Kennedy v. Coca-Cola Bottling Co. of New York*, 170 F. Supp. 2d 294, 297-98 (D. Conn. 2001) (denying summary judgment on respondeat superior claim based on intentional infliction of emotional distress where there remained "a genuine issue of material fact as to whether the actions [by various management level employees] directed at plaintiffs, when viewed collectively, rise to the level of extreme and outrageous conduct").

Applying Connecticut General Statute § 52–577 as the proper three-year limitations statute, the present claim for respondeat superior survives for the present. *See, e.g., Phillips v. Merrill Lynch, Pierce, Fenner & Smith*, Inc., No. 3:05CV1959 AHN, 2006 WL 3746692, at *5 (D. Conn. Dec. 15, 2006) ("[T]o the extent that the Panel considered Phillips's respondeat superior claim as

a distinct claim, as opposed to a mere theory of tort liability, the Panel could have justifiably and correctly applied the three-year tort statute of limitations to it, [Conn. Gen. Stat. § 52-577].") (citing *Matthiessen v. Vanech*, 266 Conn. 822, 839 (2003) (describing respondeat superior as an employer's tort liability arising from an employee's underlying tortious conduct)).

Although Plaintiff was arrested in May of 2017, her criminal case was not dismissed until November 8, 2019. Applying the "continuing course of conduct" doctrine, Defendant Witcher allegedly acted in conspiracy with the New Haven Police Department to continue prosecuting Plaintiff for false criminal charges in judicial proceedings until November 8, 2019. Accordingly, Plaintiff's respondeat superior claim, filed on November 8, 2022, the three-year anniversary date that her charges were dismissed, fell within the three-year statute of limitations. The respondeat superior claim may proceed.

### III. CONCLUSION

For the foregoing reasons, Defendants' "Motion to Dismiss Plaintiff's Complaint" [Doc. 19] is GRANTED in part and DENIED in part.

With respect to Plaintiff's claims under 42 U.S.C. § 1983 in Count I of her Second Amended Complaint [Doc.15], applying the relevant statute of limitations, Connecticut General Statute § 52–577, her false arrest and *Monell* claims are DISMISSED as untimely and her malicious prosecution and due process claims may proceed.

In addition, as to Count II, Plaintiff's claim under 42 U.S.C. § 1985 for conspiracy to commit malicious prosecution remains DISMISSED WITH PREJUDICE for "failure to allege discriminatory animus toward a protected class."[16]

---

[16] *See* Doc. 13, at 6 & 10 (Order adopting Magistrate Vatti's "Recommended Ruling" [Doc. 7]).

As to her state law claims, Plaintiff's claim in Count III for malicious prosecution is DISMISSED as untimely; but her intentional infliction of emotional distress and respondeat superior claims in Counts IV and V, respectively, remain pending as timely-filed.

In ruling on this motion, the Court notes that Defendants requested dismissal of the pending claims solely on the basis of untimeliness. To be clear, at this time, the Court expresses no opinion regarding the merits of Plaintiff's claims.

Additionally, as discussed *supra*, the case docket reflects that Plaintiff may have failed to update her current address of record for service. A year ago, the Clerk's Office noted that an envelope mailed to her, containing a Court-issued "Rule 41(a) Notice" for failure to prosecute her action for six months, was returned to Court by postal service, marked "Undeliverable. Return to Sender– Unable to Forward." Pursuant to Local Civil Rule 83.1(d), a "self-represented party must provide an address where service can be made upon such party." D. Conn. L. Civ. R. 83.1(d)(1). Moreover, Local Civil Rule 83.1(d)(2) provides that Mayes must notify the Court of any change of address within thirty (30) days of such change. Failure to do so may result in the dismissal of the case for failure to prosecute. Plaintiff is thus hereby ORDERED to promptly update her address, as needed.

Finally, with respect to remaining case deadlines, discovery has closed in this action. Dispositive motions shall be filed on or before **December 23, 2024**; and the joint trial memorandum must be filed within **thirty (30) days** after this Court rules on the last-filed dispositive motion. If no dispositive motion is filed, the joint trial memorandum will be due on or before **January 15, 2025.**

The case will be trial ready **thirty (30) days** after the joint trial memorandum is filed.

It is SO ORDERED.

Signed: New Haven, Connecticut
          November 26, 2024

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge