**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

NOELLE MAYES,
Plaintiff,

v. Case No. 3:22-cv-1426 (OAW)

CITY OF NEW HAVEN, *et al*.,
Defendants.

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Pro se Plaintiff, Noelle Mayes, brings this action against the City of New Haven and New Haven Police Officer Leslee Witcher. Plaintiff alleges that she was maliciously prosecuted and that Witcher fabricated evidence, bringing claims under 42 U.S.C. § 1983 and state law. The court has reviewed Defendants' motion for summary judgment against Plaintiff on all counts, as well as the record in this case.[1] For the foregoing reasons, Defendants' motion is **GRANTED.**

## I. BACKGROUND

The facts set forth below are taken from Defendants' Local Rule 56(a) Statement and exhibits. On January 21, 2017, New Haven Police Officer Leslee Witcher reported

[1] Over a year and a half ago, Defendants docketed and mailed to Plaintiff notice of the consequences of failing to respond to their summary judgment motion. ECF No. 27. Plaintiff has not filed a response, leaving Defendants' motion unopposed. However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 242 (2d Cir. 2004). The district court may not grant an unopposed motion for summary judgment "without first examining the moving party's submission to determine if it has met its burden." *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001). "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear,* 373 F.3d at 244.

to 74 Day Street for a harassment complaint. Defs.' Local Rule 56(a)1 Statement of Undisputed Facts ¶ 1, ECF No. 26-2 (hereinafter "Defs.' SOF"); ECF No. 26-3 ¶ 5. Once there, Witcher spoke with LaJeffies Hill, who informed her that she had a protective order against Plaintiff. The protective order stated that "[Plaintiff] cannot Assault, Threaten, [or] Harass [Hill,] which includes (via social media, electronic devices), she must stay away from [Hill's] home, place of business and cannot come within [] 100 feet [of her]." Defs.' SOF ¶ 2; ECF No. 26-3 ¶ 6. Hill informed Witcher that on January 20, 2017, Plaintiff came to Hill's home and "began banging and knocking on her door . . . yelling through the mail slot that she was a whore," and telling Hill "to come outside so she can beat her ass." Defs.' SOF ¶ 3; ECF No. 26-3 ¶ 7. Hill told Witcher that she was "scared" and "felt threatened" by Plaintiff's actions because it "had been going on for a long time." Defs.' SOF ¶ 4; ECF No. 26-3 ¶ 8. Hill told Witcher that Plaintiff "keeps harassing her via social media by posting lude and provocative photos of [Hill] on social media sites and advertising her personal business" on the sites. Defs.' SOF ¶ 5; ECF No. 26-3 ¶ 9. Hill stated that Plaintiff would "not stop harassing and threatening her," and continued to post negative things about her online, suggesting that Hill "is a prostitute and has her home address online, and people have come to her home at all hours of the day and night requesting sexual favors." Defs.' SOF ¶ 6; ECF No. 26-3 ¶ 10.

Hill also stated that Plaintiff called the police department "making false allegations about [Hill] coming" to Plaintiff's property and "vandalizing" it. Defs.' SOF ¶ 7; ECF No. 26-3 ¶ 11. Hill received a call on January 21, 2017, from the Branford Police Department, who stated that Plaintiff had called them and said that Hill was at Plaintiff's home "vandalizing her vehicle." However, Hill was "home in bed and asleep, and had no idea"

what Plaintiff was talking about. Defs.' SOF ¶ 8; ECF No. 26-3 ¶ 11. Hill told Witcher that "she fears for her life and her children's life because [Plaintiff] is crazy and will do anything to destroy [Hill's] life," as Plaintiff "has done this type of thing to numerous people who have told [Hill] about [Plaintiff's] mental status." Defs.' SOF ¶ 9–10; ECF No. 26-3 ¶ 13–14. Hill filled out and executed a sworn statement regarding her complaint against Plaintiff on January 21, 2017. Defs.' SOF ¶ 11; ECF Nos. 26-3 ¶ 15, 26-4. On that same day, Witcher submitted an arrest warrant for Plaintiff for violating a restraining order (Conn. Gen. Stat. § 53a-223b), harassment (Conn. Gen. Stat. § 53a-183), and threatening (Conn. Gen. Stat. § 53a-62), which was signed by a judge. Defs.' SOF ¶ 13; ECF No. 26-3 ¶ 17. On May 9, 2017, Plaintiff was arrested by New Haven Police pursuant to the arrest warrant. Defs.' SOF ¶ 14; ECF No. 26-5 ¶ 7. The charges eventually were dismissed on November 8, 2019. ECF No. 20 at 2.

In her Second Amended Complaint, ECF No. 15, Plaintiff essentially brings claims of malicious prosecution and intentional infliction of emotional distress, for which she seeks monetary damages. Defendants have moved for summary judgment.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue as to any material fact and it is clear that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view "the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).

The moving party has the burden of showing that no genuine issue of material fact exists. "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party meets its burden, the non-moving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To defeat a motion for summary judgment, the non-moving party must demonstrate there is a genuine dispute of material fact for trial. He must offer "significant, probative evidence on which a reasonable fact-finder could decide" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256–57. He may not "merely rely upon the allegations contained in the pleadings that raise no more than 'some metaphysical doubt as to the material facts.'" *Anderson v. Romano*, 2010 U.S. Dist. LEXIS 120395, at *7–*8 (S.D.N.Y. Oct. 22, 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986)). Summary judgment is appropriate if the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

Plaintiff brings claims against Witcher under § 1983 for violations of her due process rights and for malicious prosecution. She brings state law for intentional infliction of emotional distress against Witcher, and a corresponding claim for respondeat superior liability against the City of New Haven. *See* ECF No. 20 (noting that several claims were

dismissed as untimely and listing the remaining claims). Defendants argue that all the remaining claims fail as a matter of law. The court addresses each seriatim.

**A. <u>42 U.S.C. § 1983 Malicious Prosecution Claim</u>**

Plaintiff brings claims against Witcher under § 1983, alleging that "the officer police report did not represent the facts" and that Witcher lacked probable cause, and as a result she was maliciously prosecuted.[2] ECF No. 15 at 4.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Under Connecticut law, the plaintiff must prove (1) that the defendants "initiated or procured the institution of criminal proceedings against the plaintiff," (2) that the "criminal proceedings have terminated in favor of the plaintiff," (3) that the "defendant acted without probable cause," and (4) that the "defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Galazo v. City of Waterbury*, 303 F. Supp. 2d 213, 218 (D. Conn. 2004) (citing *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)). "[T]he existence of probable cause to arrest is a complete defense" to a claim for malicious prosecution. *Sanchez v. Town of Greece*, No. 98-cv-6433, 2004 WL 1964505, at *3 (W.D.N.Y. Sept. 1, 2004).

[2] Plaintiff's allegations are taken from her second amended complaint. ECF No. 15. Importantly, only a "verified complaint is to be treated as an affidavit for summary judgment purposes." *Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *3 (D. Conn. Oct. 9, 2019) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Plaintiff's amended complaint is not a verified complaint; therefore, it will not be considered in determining whether material issues of fact exist for summary judgment purposes.

Here, it is clear that Hill told Witcher that she had a protective order against Plaintiff, which prohibited Plaintiff from assaulting, threatening, or harassing her, either in person or online. ECF No. 26-2 ¶ 6. Hill also informed Witcher that Plaintiff did not follow the protective order, as she contacted, threatened, and harassed her. *Id.* ¶¶ 6–12. Witcher had enough to establish probable cause from this interaction. Witcher "reasonably credited" the information Hill provided, who told her that Plaintiff violated the protected order, harassed, and threatened her. *Pierson v. Hancock*, No. 9-cv-02042 (PCD), 2011 WL 2938060, at *4 (D. Conn. July 19, 2011). Furthermore, Hill signed a sworn statement attesting to such facts. ECF No. 26-4. As there was nothing at the time of arrest which would cause Witcher to believe that Hill had fabricated any of her statement, Witcher had probable cause to arrest Plaintiff. *Id.* ("It is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness whom they reasonably believe to be telling the truth") (quoting *Little v. City of N.Y.,* 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007)).

Moreover, a "valid warrant issued by a neutral magistrate does suffice to create a presumption of probable cause, and a plaintiff who seeks to argue that a warrant was issued on less than probable cause faces a heavy burden." *Kirkland v. City of N.Y.*, No. 06-cv-0331, 2007 WL 1541367 *4 (E.D.N.Y. May 25, 2007) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). For a warrant to be valid, (1) a "disinterested magistrate" must issue the warrant; (2) the individuals seeking the warrant must demonstrate to the magistrate judge that "the evidence sought will aid in particular apprehension or conviction" for a specific offense; and (3) the "warrants must particularly describe the things to be seized," as well as the place to be searched. *Dalia v. United States*, 441 U.S. 238, 255 (1979).

"A police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages." *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 308–09 (D. Conn. 2002) (quoting *Simms v. Vill. of Albion,* 115 F.3d 1098, 1106 (2d Cir. 1997)). "Police activity conducted pursuant to a warrant rarely will require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith." *Shattuck*, 233 F. Supp. 2d at 09. The officer's reliance on the magistrate judge's determination must be objectively reasonable. *Id.* But the court's inquiry into the reasonableness is limited to determining whether a "reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization. *Id.* (quoting *Simms,* 115 F.3d at 1106).

Therefore, the issuance of the warrant related to Mayes's harassment, threatening, and violation of a restraining order creates a presumption that it was objectively reasonable for Witcher to believe that probable cause existed. Plaintiff can overcome this presumption by producing evidence from which a reasonable juror could conclude that Witcher's reliance on the probable cause determination was objectively unreasonable. *Id.* This involves "an examination of whether a reasonably well-trained officer would have known that the warrants were illegal despite the judge's authorization." *Id.*

Here, Plaintiff put forth no evidence from which a reasonable juror could conclude that Witcher knew or should have known that the warrant lacked probable cause. She merely states that Witcher "accused the Plaintiff of criminal activity knowing those accusations to be without probable cause." ECF No. 15 at 7. She alleges that Witcher

should have known that Hill was making a false report, but "police officers are entitled to rely on the report of an alleged victim or witness where there is no reason to believe that person is not telling the truth." *Leone v. Fisher*, No. 5-cv-521 (CFD), 2007 WL 2874777, at *5 (D. Conn. Sept. 28, 2007), *aff'd*, 312 Fed. Appx 408 (2d Cir. 2009); *see also Vangemert v. Strunjo*, No. 8-cv-700 (AWT), 2010 WL 1286850, at *5 (D. Conn. Mar. 29, 2010) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable case . . . . Probable cause does not require that an arresting officer believe with certainty that the arrestee will be successfully prosecuted.") There is nothing in the record indicating that there was a reason for Witcher to believe that Hill was not telling the truth. Accordingly, Defendant's motion for summary judgment on this claim is granted.

**B. <u>42 U.S.C. § 1983 Due Process Claim</u>**

Plaintiff brings a claim against Witcher alleging her due process rights were violated because Witcher "fabricated false reports and other evidence." ECF No. 15 at 6. The court has previously construed Plaintiff's due process claims as one for a "deprivation of the right to a fair trial," ECF No. 20 at 11, as it focused on Plaintiff's claims that Witcher fabricated "false reports and other evidence, thereby misleading and misdirecting the criminal prosecution," ECF No. 15. This is consistent with precedent. *Ashley v. City of N.Y.*, 992 F.3d 128,131–32 n.1 (2d Cir. 2021) (noting that although the court has "frequently referred to this claim as a 'fair trial claim," labeling it as a "fabricated-evidence claim' helps avoid confusion; a claim for fabricated evidence "does not require that a plaintiff have been subjected to trial; it is enough that the fabrication results in a deprivation of the plaintiff's liberty").

To prove a fabricated evidence claim, the plaintiff must prove that "the defendant provided the prosecutor fabricated evidence that was likely to influence a jury's decision, and the plaintiff suffered a deprivation of liberty as a result." *Carwell v. City of N.Y.*, No. 21-cv-480, 2023 WL 419182, at *8 (S.D.N.Y. Jan. 26, 2023) (citation modified) (quoting *Jovanovic v. City of N.Y.*, 486 Fed. Appx 149, 152 (2d Cir. 2012) (summary order)). "The plaintiff need not have been tried to make out this claim so long as some deprivation of liberty occurred." *Ashley*, 992 F.3d at 138.

Here, Plaintiff has provided no evidence to support this claim. She speculates that "Defendant fabricated false reports and other evidence," "manufactured" evidence, and "create[ed] a sworn police report containing materially false evidence," which misled the prosecution. ECF No. 15 at 6. However, she provides no evidence to support said allegations, and such speculation is "insufficient to create a question of fact at the summary judgment stage." *Carwell*, 2023 WL 419182, at *8; *Debrosse v. City of N.Y.*, 739 Fed. Appx 48, 51 (2d Cir. 2018) (summary order) (granting summary judgment because plaintiff's assertion that officers deliberately falsified evidence was based on "conclusory, speculative allegations and unsupported by admissible evidence in the record"). Because there is no evidence that Witcher falsified evidence, Defendant's motion for summary judgment on this claim is granted.

**C. <u>State Law Claims</u>**

Plaintiff brought claims for intentional infliction of emotional distress against Witcher, and a corresponding respondeat superior claim against the City of New Haven. The court will address each seriatim.

To state a claim for intentional infliction of emotional distress, Plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ.*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). The alleged conduct must exceed "all bounds usually tolerated by decent society." *Petyan*, 200 Conn. at 254, n. 5. Absent other factors which would constitute "extreme and outrageous" conduct, "an arrest will not be considered intentional infliction of emotional distress if the arresting officer has probable cause to make the arrest." *Zalaski v. City of Hartford*, 704 F. Supp. 2d 159, 176–77 (D. Conn. 2010).

Here, as discussed above, the arrest was made with probable cause, and Plaintiff has failed to allege or identify any behavior that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Appleton*, 254 Conn. at 210). Accordingly, Defendants are entitled to summary judgment on this claim.

Plaintiff also asserts a claim of respondeat superior liability, related to her intentional infliction of emotional distress claim, against the City of New Haven. However, under Connecticut law it is well established that a municipality is not liable for the intentional conduct of its employees. *Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 263 (D. Conn. 2022) (noting that it is "well established" that municipalities "may not be held liable for the intentional torts of their employees," including claims for intentional

infliction of emotional distress). Accordingly, Defendants are entitled to summary judgment on this claim.

## IV. CONCLUSION

For the reasons discussed herein, the court hereby **GRANTS** Defendants' motion for summary judgment **(ECF No. 26).** The Clerk of Court is asked to please enter judgment consistent with this order and to close this case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 28th day of August, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE